UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| | Civil Action No. 3:21-cv-00775 |
| Judy A. Juracek, | **COMPLAINT FOR COPYRIGHT INFRINGEMENT; REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION** |
| Plaintiff | |
| v. | JURY TRIAL DEMANDED |
| Capcom CO., LTD. and Capcom USA, Inc., | |
| Defendants | |

## FIRST AMENDED COMPLAINT

Judy A. Juracek (hereinafter "Plaintiff" or "Juracek") brings forth this action against

Capcom CO., LTD. and Capcom USA, Inc (hereinafter collectively "Capcom" or "Defendants")

and complains and alleges as follows:

## INTRODUCTION

1.      This is an action for federal copyright infringement under 17. U.S.C. § 101 *et seq*,

and/or contributory copyright infringement and removal of copyright management information.

## PARTIES

2.      Plaintiff Juracek is an individual with an address at 55 Turkey Plain Rd, Bethel

CT 06801.

3.      Upon information and belief, Defendant, CAPCOM CO., LTD. ("Capcom

Japan") is a Corporation organized in Japan with an address of 3-1-3 Uchihiranomachi, Chuo-ku

Osaka JAPAN 540-0037.

4.      Upon information and belief, Defendant, Capcom U.S.A., Inc.  ("Capcom USA") is a California corporation having an address at 185 Berry Street, Suite 1200, San Francisco, CA 94107.  Capcom USA is a subsidiary of Capcom Japan.

5.      The term "Capcom" or "Defendants" as used herein is used to refer to each defendant individually unless otherwise stated.

6.      Capcom, and/or its agents or affiliated companies sell the game and series of games referred to as RESIDENT EVIL throughout the United States and the World, including sales in Connecticut.

## JURISDICTION AND VENUE

7.      This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, and 1338 over the copyright claims because the action alleges *inter alia* violations of federal statutes.

8.      Venue is proper in this judicial district under 28 U.S.C. § § 1391, 1400(a) because a substantial part of the events giving rise to the claims raised in the lawsuit occurred in this judicial district, and because Defendants conduct business in this district and Defendant's actions have injured Juracek, a Connecticut resident.

9.      Upon information and belief, this Court has jurisdiction over Defendants because Defendants committed acts of copyright infringement in this district and have distributed copies of various infringing works that wrongfully utilize Juracek's photographs as described further herein, causing injury to Plaintiff in this state and district.  Further, Capcom Japan has gained revenue from and entered into contracts with Connecticut residents who are users of the Resident Evil and other games containing infringing contact, thus specifically profiting from and distributing game in that online portals related to the Resident Evil game specifically involve the user contracting with and agreeing to terms of service with Capcom Japan and due to the

widespread sales of the games at issue, Capcom Japan has certainly entered into contracts with these users to support the games at issue and to obtain further revenue from in game purchases for the games including Resident Evil and others in which infringing photographs have been identified in this Complaint.

10.     Defendants sell and market products in Connecticut which include Plaintiff's copyrighted material.  Capcom USA and Capcom Japan are both identified on the rear jacket of games which are available for sale in Connecticut including at Game Stop locations in Connecticut, not limited to ones in Stamford, Connecticut, and these games contain infringing photos as further discussed in this Complaint.  Furthermore and upon information and belief, Defendant knew or had reason to believe that Plaintiff was located in Connecticut and that harm would be felt in Connecticut as a result of Defendant's actions at least because Juracek's address both currently and at the time of publication of the book and CD-ROM indicated she was a Connecticut resident and Capcom Japan had access to the files in the CD-ROM and used them in games.  Further, Capcom USA continued to distribute games containing infringed copies of Juracek's photos despite clear and unambiguous pre-suit notice of Juracek's claims and copyright.

11.     Defendants have purposely availed themselves to this state and this district at least because they have promoted and sold their infringing products to consumers in this state and district.

12.     Specifically, Capcom USA sells and distributes the infringing games identified herein throughout the United States.  For example, Capcom USA sells the Resident Evil series of games at retail gaming stores in Connecticut.

13.     Capcom Japan designed the infringing games and provided those games to

Capcom USA with the specific intent of distributing those games throughout the United States and in Connecticut. Capcom Japan continues to provide additional releases of the underling game in different platforms, for example on Nintendo Switch, within the previous three years. Capcom Japan also operates a game specific website for Resident Evil https://game.capcom.com/residentevil/en. This website provides a portal for users to interact with and for Capcom Japan to promote further sales of Resident Evil series games to US customers, including customers in Connecticut which promotes the sale of infringing games sold by Capcom USA and/or downloads provided by Capcom Japan either directly or through its distributors or agents. Users of the Resident Evil Portal or Resident Evil.net log in and agree to terms and conditions of use and therefore enter into a contract with Capcom Japan and these users include users from Connecticut who have purchased Resident Evil games and play Resident Evil games as these portals are used to share game play data and to connect to the Capcom Japan network for game play and for purchase and exchange of in game points and thus Capcom Japan is specifically earning revenue based on use of the infringing games they designed and that revenue comes direct from the end user with whom Capcom Japan contracts with. Due to the widespread and substantial distribution of the games at issue, upon information and belief, these end users include numerous end users in Connecticut. The ResidentEvil.net terms and conditions specifically require US users to agree to the terms and in fact requires that any inconsistency in translation between Japanese and English versions will require the Japanese version to prevail. The terms and conditions allow for Capcom Japan to send newsletters related to Resident Evil to promote the sale of Resident Evil games and to collect data and other information used for marketing by Capcom USA to further promote the sales of infringing games. Capcom Japan knowingly induces, causes or materially contributes to copyright

infringement, by Capcom USA at least because Capcom Japan knowingly stole Juracek's photos and image files, added them to the games described herein and provided those games to Capcom USA for continued distribution.

14.     Furthermore, various online websites owned and controlled by Capcom Japan evidence that Capcom Japan has entered into agreements with various distributors including Sony/PlayStation, Microsoft/Xbox, Steam and Stadia and sell and distribute the Resident Evil and other identified infringing games via online downloads and in connection with each of these online download platforms, in which both the developer and publisher is Capcom Japan (see below screenshot and annotated screenshot):





15.     Further, the release date of Resident Evil Village on Steam is May 7, 2021 and

thus Capcom Japan has continuted to distribute copies of games and continued to develop

versions of the Resident Evil game for different platforms which wrongfully include Juracek's

photographs.  Capcom Japan, through Steam as sales agent, has, upon information and belief,

distributed digital download copies of infringing games to Connecticut residents.

16.     Additionally, the Xbox store also identifies Capcom Japan as the owner/publisher

and Xbox/Microsoft operates as Capcom Japan's sales agent for digital downloads of infringing games which upon information and belief are sold to Connecticut residents.  These games offer "in-game purchases" which would involve users of an infringing game in Connectiut specifically purchasing items within an infringing game and paying Capcom Japan.



17.     Accordingly, Capcom Japan has transacted business in Connecticut by selling games and specifically digital downloads through sales agents/distributors and Capcom Japan has further developed and sent files containing infringing copies to Capcom Japan's distributors which have wrongfully injured Juracek, a Connecticut resident, by using those photographs without payment and making copies for further copying and distribution in Connecticut.

18.     Therefore, Capcom Japan either itself or by and through its distributors and sales agents and representatives has regularly solicited sales from Connecticut residents related to the infringing games at issue both by sales of the underlying games and through in-game purchases

and Capcom Japan expects or should reasonably expect that the act of copying Juracek's photographs into its games and distributing them through distributors with nationwide presence and sales operations in Connecticut would have consequences in Connecticut and Capcom Japan derives substantial revenue from Connecticut and through interstate and international commerce at least because Capcom Japan is identified as the publisher of the infringing games which are sold in the United States to the tune of hundreds of millions dollars of sales.

19.     Capcom Japan has and continues to solict business in this state in the form of sales of infringing games and continues to distribute infringing games to Connecitcut residents including via digital downloads and Capcom Japan contracts with other entities who sell and distribute copies of infringing games in Connecticut for Capcom Japan.  Capcom Japan further produces game software which it knows and intends will be and is distributed, used and consumed by Connecticut users.  Further, Capcom Japan has continued to commit to tortiously infringe Juracek's copyrights by copying her images into its games and failing to remove the infringing use of photographs from its games despite notice prior to the initiation of this suit.

20.     Capcom Japan also transacts business with Connecticut resident users of the various online portals which provide in-game purchase options which are offers to sell which are accepted in Connecticut by Connecticut residents to obtain revenue from these Connecticut residents users where Capcom Japan has not registered to do business in Connecticut and thus is in violation of Conn Gen State 33-920 and Capcom Japan uses the portal and its knowledge of users to further sell and market other infringing games to these users and thus cause further distribution and sales transactions of infringing copies.

21.     With respect to Capcom USA, this entities name appears on the back of physical copies of game boxes of infringing games at Game Stop locations in Connecticut, specifically

including Stamford, Connecticut.

22.     Furthermore, when reporting its sales and market size/distribution in

annual/quarterly reports and other reports required as a public company, Capcom Japan reports

sales and market size to include operations in the US which presumably includes its own sales in

the US along with sales of its subsidiary Capcom USA in the US and a substantial portion of

those sales, upon information and belief, are made in Connecticut or to Connecticut residents.

Further, Capcom Japan's distribution model specifically targets the entire US market and

Connecticut through various physical retailers and online download retailers through which

Capcom Japan and Capcom USA distribute the games which contain infringing photographs.

23.     With Capcom Japan controlling the content of the games which Capcom USA

distributes, Capcom Japan exercises extensive control over Capcom USA's infringing activities,

and both entities utilize and share the same branding and content and Capcom Japan as parent,

upon information and belief, retains strategic decision making powers over Capcom USA which

are specifically related to this dispute including the decision whether or not to cease use of

Juracek's photographs, the decision whether or not to continue to distribute games including

Juracek's photographs and the decision whether or not to identify Juracek as an owner of images

within the games.  Capcom USA therefore functions as Capcom Japan's US operations

department and Capcom Japan owns all of the stock of Capcom Japan and Capcom Japan has the

power to make major strategic and other decisions for Capcom USA.  Furthermore, both

companies maintain a unified image as distributing the same or nearly the same content,

marketing image, branding, trademarks and sales and distribution systems and Capcom Japan

maintains strategic control over Capcom USA's budget and growth at least as evidenced by the

fact that all of Capcom USA's revenue and sales activity is considered part of and revenue and

sales of Capcom Japan in annual and quarterly reports/filings required of public companies, and upon information and belief in other financial analysis and strategic planning functions. Furthermore, the website capcom.com/us indicates that Kenzo Tsujimoto is Chairman and CEO of Capcom, Co. Ltd. and Mr. Tsujimoto maintains property in California where he lives part time and/or is a part time resident, and upon information and belief, he personally exercises control over Capcom USA by working in and/or meeting in Capcom USA's offices while maintaining said part time California residency/presence.

24.     Furthermore, Capcom Japan's investor relations site https://www.capcom.co.jp/ir/english/company/address.html indicates that Capcom USA is 100% owned by Capcom Japan and that "With a powerful management system that covers affiliated companies in Japan and overseas, we conduct group business operations in a strategic manner in order to strengthen our base of operations", thus indicating that Capcom Japan controls the strategic decision making of Capcom USA.

## FACTUAL BACKGROUND

25.     Plaintiff has been a professional scenic artist, scene designer and photographer for much of her career, working on numerous well known film and TV productions.

26.     As part of Plaintiff's work, she traveled around the world photographing various and unique decorative surfaces and features as part of her research related to set design which photographs are distinctive and exclusive to Plaintiff and incorporate Juracek's unique perspective into each photograph.  These photos are extremely useful to designers and architects looking to create distinctive and memorable scenery and decorative features.

27.     As a result of Plaintiff's work over the years, she grouped together various examples of unique and interesting surfaces, textures and features into a book and CD-Rom

("CD-ROM") which represented Plaintiff's extensive personal research work into decorative surfaces and textures.

28.     More specifically, plaintiff is the author and photographer of the photography book called "SURFACES" which was published by the W.W. Norton Company and includes a copyright notice "© 1996 by Judy A Juracek All rights reserved" immediately next to the table of contents page.  The ISBN is 0-393-73007-7 (the "book"). The book starts off "This collection of photographs began as my private file of photo research…."

29.     Juracek is the owner of U.S. Copyright Registration No. TX4-442-862 which claims "text, photographs, and compilation in book; compilation on CD-ROM" as found in the book.

30.     This book also included a CD-ROM which provided digital copies of the photos ("photographs") and suggested that the photos could be useful for various purposes and invited interested persons to contact Juracek if licenses were desired.  The CD-ROM also contains a copyright notice "© 1996 by Judy A Juracek All rights reserved".

31.     As a result of the book and photographs and CD-ROM, Juracek licensed copies of various photographs to many different parties who sought to use the photos commercially and the book became a very popular way for architects and designers to obtain exclusive high quality examples of unique decorative surfaces and features through the many photos from the CD-ROM each unique in e.g. selection, framing, detail, lighting, and perspective.  The parties were required to contact Juracek to obtain high resolution digital files as the CD-ROM files were not high resolution.  For the sake of clarity, anyone seeking a license for the photographs from the book or CD-ROM were required to contact Plaintiff to obtain the photos in a high resolution

digital file suitable for commercial use as all rights were reserved as set forth in the copyright notice.

32.     At all times, Juracek retained and continues to retain full ownership of book and photographs.

33.     The CD-ROM also included a copyright notice on the front of the CD-ROM.

34.     Juracek never sold or licensed the photographs to Defendants.

35.     In the book, and the CD-ROM, the photographs are numbered.  For example "G-79 shattered safety glass" in the book refers to a photo of shattered safety glass which Juracek obtained in Italy.

36.     The CD-ROM includes a file called "G079" which is the same photo and a copy of that photo is found below.



37.     This "G079" is but one example of the many highly unique photographs in Juracek's book and CD-ROM, more specifically, the photo was taken in Italy of a unique looking glass shatter pattern that upon information and belief would not be duplicated by any

other shattering of glass in that the probability of an object hitting the same thickness and configuration of glass identically at any other location is impossible or exceptionally remote.

38.     Capcom's primary logo for RESIDENT EVIL including the game, and related merchandise uses this "G079" photo to create the logo.

39.     The below commented analysis shows that Capcom has directly copied "G079"



40.     Thus, upon creation of the logo, Capcom Japan and/or Capcom USA uploaded, copied or otherwise added G079 to the design program in order to create the logo and thus wrongfully copied the image into the logo and Capcom Japan and Capcom USA continue to distribute copies of games including the logo which itself contains Juracek's photo.

41.     The below commented analysis shows that Capcom has directly copied #W061 which photo was taken at the Lockwood mansion  located in Norwalk, Connecticut.  The public does not have access or permission to photograph the inside of the mansion.  It is extremely unlikely for Capcom to have had access to the mansion to photograph such image.

Photo from the mansion:



Resident Evil 4 door and frame is a copy of
W061 manipulated to fit game scenery

W061

42.     These are but two examples of infringement in which the unique nature of the

photo(s) and Defendant's reproduction makes it almost impossible for Defendant to have created

or obtained the design from another source.

43.     Various versions of Capcom's RESIDENT EVIL game and merchandise have

used approximately 80 or more of Juracek's photographs which appeared over 200 times in

Defendants' RESIDENT EVIL games.  Comparisons showing Plaintiff's photos used by

Defendants are found at Exhibit A.   Specifically, it is alleged that Capcom Japan took photos

from the Surfaces CD ROM and uploaded them or added them into their design programs for

creating the game and that Capcom USA sells that game.  The photos are actually copied into the

underlying 3d model, Photoshop or other software files for the game.  Each time an infringing

game is offered on a new gaming platform, Capcom Japan or its gaming developer uses these photos to compile a game for distribution through Capcom USA or through download via Capcom Japan's distributors and sales agents.

44.     Given the wide amount of copying of unique photographs not available elsewhere, it is apparent that Defendant had access to the book or CD-ROM, or both.

45.     Specifically, Capcom was subject to a security breach/hacking in 2020 which is believed to have occurred approximately in November 2020.

46.     Some Capcom data released by the hackers included high resolution images of artwork used in Resident Evil and other games.

47.     The file names for at least one of the images from the Capcom hacked files are the same file names as those used on the CD-ROM.

48.     For example, the file name for a metal texture image from the CD-ROM is "ME009" and Capcom has ME009 stored in the files of one or more of Capcom Japan and Capcom USA games they continue to distribute in various platforms throughout the United States and in Connecticut.  Thus, Capcom actually used this photograph in its game(s) and each time the games are downloaded or burned onto a disk, the underlying game files include a copy of Juracek's ME009 photograph.

49.     ME009 is copied below:



50.   A screen shot of one of the file directories of a Capcom infringing game in uncompiled form as shown below confirms that Capcom's games actually include a copy of ME009:



A zoomed in screen capture of the above photo is copied below and shows that "ME009" actually appears in the uncompiled game file for Capcom's infringing games:



51.   The ".tga" extension is simply one type of image file extension and amounts to an instance of mechanical copying/conversion from one file extension to another used by Capcom's modeling software and the photo content remains the same.

52.   Therefore, a photo with the ME009 name is in Capcom's files and this is in fact Juracek's photograph which was used in one or more of Capcom's games, including RESIDENT

EVIL and thus the Capcom games actually include the photo therein.  Juracek cannot without the benefit of discovery access all of Capcom's files related to the game assets to determine how many images were used, but Exhibit A demonstrates that Capcom has engaged in a similar pattern of conduct with respect to those images identified in Exhibit A as was done with ME009 (but, upon information and belief, changing the file name to disguise infringement and removing information Juracek uses to track licenses of her photographs).  Given the multitudes of similarities shown in Exhibit A and the above conduct with respect to ME009, Capcom Japan has engaged in similar copying and insertion into game assets/files of the other images identified in Exhibit A and Capcom USA and Capcom Japan have distributed those games.

53.     Furthermore, additional galleries that Capcom used in America and Japan are paid for, which demonstrates that Capcom paid for other images aside from Plaintiff's book.  In the Facebook advertising, it is mentioned that that 3,500 textures have been repainted.

54.     Furthermore, given that approximately 80 or more Juracek images appear in RESIDENT EVIL and that the primary brand/logo of RESIDENT EVIL employs a specific shattered glass pattern that matches a Juracek photo taken in Italy, as well as the interior mansion door design that the public does not have access to, it is hard to imagine that precise duplication would be possible by independent creation.  More specifically, it is hard to imagine that Juracek would take a photo of shattered glass in Italy and an interior mansion door design and that Capcom artists would reproduce the exact same pattern of shattered glass in a logo and interior door design without benefit of Juracek's photographs. Also, given that ME009 is actually in Capcom's game files, Capcom Japan has actually copied the photographs of Juracek or otherwise inserted those photographs and portions thereof into numerous Capcom games for distribution in the United States and Capcom USA continues to sell infringing games in the United States.

55.     ME009 is one example of a photograph of Juracek where Capcom forgot to remove the image name – effectively forgetting to cover its tracks.  Capcom Japan has intentionally changed the file names of many other Juracek photos in an effort to disguise infringement and Capcom USA distributed games knowing full well that they included images where the names of the images were changed to disguise infringement.  Juracek used the file names to track licenses to images and thus the alteration of the image name involves removing the information that Juracek uses to track use of her images. In *Energy Intelligence Group v. Kayne Anderson Capital Advisors*, 2020 WL 219008 (5th Cir. 2020), the court held that the filename of a document could constitute copyright management information (CMI) within the Digital Millennium Copyright Act (DMCA) and unauthorized altering or removal of it could be the basis of liability under the copyright law.

56.     The image below is another view of one of Capcom's game file assets for an infringing game which are incorporated into each game sold. Here, the original photo name W059 was removed and a new name used to disguise infringement:



57.     Capcom's activities show a pattern of misconduct.  A Dutch filmmaker has alleged copyright infringement against Capcom for copying the filmmaker's monster designs and using the designs in the Resident Evil game, see   https://www.thegamer.com/resident-evil-village-dutch-filmmaker-report/.

58.     Capcom did not independently create the shatter pattern which is part of its logo described above in Paragraph 25.

59.     Capcom Japan or its game developer(s) created all of the identified game scenes in Exhibit A using Juracek's photographs without permission by uploading or otherwise adding Juracek's photos into Capcom Japan's design programs with altered file names in order to both disguise infringement and to create the games for distribution in the United States.  Capcom USA sold these infringing games in physical copies and Capcom Japan sold downloads and obtained revenue from those users related to game play all while keeping track of those users

through a newsletter/portal to further market other infringing games to those users, thus using the infringing product to further promote infringing product sales.

60.     Juracek did not discover the copying until more recently in large part due to the separation of Juracek's name and copyright notice from her images and the re-naming of the images to disguise infringement.  Once Juracek noticed the infringement, she quickly gathered examples of copying and provided those to Capcom in the form of a copyright infringement notice letter.

61.     Capcom has not ceased use or altered their conduct despite clear and specific identification of numerous infringements.  In fact, Capcom Japan and Capcom USA continue to release infringing games on ever expanding gaming platforms.

62.     Upon information and belief, Capcom is involved in a virtual reality project with Facebook/Oculus or related entities that includes making games available through a Facebook platform, which games include or will include Juracek's copyrighted works.  Capcom Japan and/or Capcom USA have made and sent and distributed copies of the backup files and image assets underlying the infringing games and containing Juracek's images by providing the same to Facebook/Oculus with the intent of having Facebook/Oculus further distribute additional copies or sell licenses or otherwise transfer the games for use by end users all with modified image names and without notice of Juracek's copyright.   The original Facebook/Oculus Quest announcement video for Resident Evil 4 in VR displayed the logo with the shatter pattern (G079 under paragraph 39 above), see https://www.youtube.com/watch?v=Bu7vJYpakPU:



Subsequent to the filing of this initial Complaint, Facebook/Oculus Quest has changed the logo in its announcement videos to remove the shatter pattern which suggests that Facebook/Oculus Quest is aware of the infringements, see https://www.youtube.com/watch?v=d3Qmy0tHjxo:



and https://www.youtube.com/watch?v=qTIizcuSdHg:



63.     Capcom did not independently obtain images of the photographed surfaces,

rather, Capcom Japan uploaded, added or otherwise included Juracek's photographs in the games

they design and publish and Capcom USA and Capcom Japan sold and continue to sell or

otherwise distribute those infringing games.

64.     Capcom also separated the copyright notice on the front of the CD-ROM from the

images when Capcom stored the files from the CD-ROM, thus intentionally separating/removing

the copyright management information from the images, making it significantly more difficult

for Juracek to discover the infringing conduct.  The book included a copyright notice which was

also separated from the photographs Capcom used and the CD-ROM also contained an image

naming convention unique to Juracek and which Juracek has used to issue licenses for specific

photographs from the CD-ROM. This naming convention of the files was changed by Capcom

Japan and/or Capcom USA and separated/removed which further disguised infringement.

Furthermore, a file within the CD-ROM also included a copyright notice which the photographs

were also separated from when used by Capcom Japan and Capcom USA. Furthermore, when

Capcom Japan and Capcom USA sell/distribute games including Juracek's photograph, they do

not provide credit or provide notice or other indication that images contained in the underlying

games are from Juracek. The foregoing is done with the intent to induce, enable, facilitate or

conceal infringement.

## COUNT I
## Copyright Infringement – 17 U.S.C. § 101 *et seq*

65.     Plaintiff repeats and realleges the allegations contained in the prior paragraphs of

this Complaint and incorporates them herein by reference.

66.     The book, photographs and CD-ROM were created and/or authored Plaintiff and

Plaintiff remains the owner of the same.

67.     Defendants have copied approximately 80 or more of the photographs and used

them over 200 times in the games.

68.     Plaintiff's copyright includes a claim to the photographs.

69.     Defendants are infringing the copyrights of Plaintiff works by unlawfully

reproducing, preparing derivative works, and publicly displaying and selling copies of identical

or substantially similar content in games, and merchandise in violation of the U.S. Copyright

Act. At no time has Plaintiff authorized Defendants to engage in such conduct.

70.     Capcom USA sells the physical games at issue and Capcom Japan sells

downloads of the games. Physical games identify Capcom USA as the distributor and Capcom

Japan as the publisher. Downloaded games identify Capcom Japan as the publisher with

Capcom Japan contracting with distribution entities to regularly sell throughout the United States and in Connecticut.  Capcom Japan and Capcom USA's sales in the United States and in Connecticut are not isolated occurrences and are part of an intentional course of conduct designed to serve the entire US market, including Connecticut, all while providing games which infringe Juracek's rights.

71.     Capcom Japan knowingly participates in that infringing conduct by providing games and the underlying files to Capcom USA for distribution throughout the United States and continuing to release infringing games in ever expanding platforms, each of which copies the Juracek images into the complied game and then the compiled game is copied numerous times (each copying Juracek's photo which is used in the underlying game design).

72.     Plaintiff is entitled to actual damages and disgorgement of profits/lost profits or at its election, statutory damages plus attorney fees and costs or alternately actual damages and disgorgement of profits plus attorney fees and costs.

73.     The full extent of Capcom's infringement is not known and Juracek believes there may be other photos not identified in Exhibit A that Capcom has used without license.

74.     According to the Capcom Japan's Annual Reports, Capcom Japan is the entity deriving the sales and reporting the sales of the infringing products.  Nevertheless, to the extent Capcom Japan is not a direct infringer, Capcom Japan knowingly participates in the infringing acts by continuing to provide an infringing game for Capcom USA to sell in the United States which is based off Capcom Japan having specifically targeted Juracek by taking her photos without authorization. Thus Capcom Japan is at minimum a contributory copyright infringer in that Capcom Japan continues to have knowledge of Capcom USA's sales and infringing activities using Juracek's photos.

75.     Capcom Japan materially contributes in that continued infringement by designing games for distribution in Connecticut across many platforms and re-releasing games across expanding platforms, including e.g. Nintendo Switch in 2019, and others, and thus Capcom Japan continues to induce, cause and materially contribute to Capcom USA's infringing conduct and to support, encourage and aid Capcom USA in distributing, selling, renting or otherwise transferring ownership interest in infringing games.

76.     Capcom Japan continues to have the right and ability to control the infringing activity of Capcom USA because Capcom Japan is the owner of the underlying trademarks and alleged owner of the copyright in the games which are provided under a license which can be revoked or Capcom Japan as the designer of the game could remove Juracek's photos or Capcom Japan as parent of Capcom USA has the ability to control the activities of Capcom USA and can halt the sales of infringing games but chose not to.

77.     Further, Capcom Japan has a direct financial interest in Capcom USA's infringing activity as described herein, including but not limited to profiting from in game sales within infringing games and from downloads and sales of physical games.  Such activity on the part of Capcom Japan has and will continue to irreparable injury to Juracek for which she has no adequate remedy at law and will continue to cause damages.

## COUNT II
## False Copyright Management Information and Removal of Copyright Management Information

78.     Plaintiff repeats and realleges the allegations contained in the prior paragraphs of this Complaint and incorporates them herein by reference.

79.     Capcom has intentionally separated Juracek's copyright notices from the photos used and has altered and removed a unique naming convention Juracek has used to track

photographs and digital files thereof.

80.     Capcom has claimed a copyright in the various Capcom games that use Juracek's photographs, thus falsely claiming complete copyright ownership to the Capcom games when those games use Juracek's copyrighted photographs and Capcom has not indicated in their games (physical or downloaded) that the games contain images owned by Juracek, thus providing copyright management information which is false and distributing copyright management information which is false.

81.     Capcom has intentionally separated the Copyright notices on the Juracek book and CD-ROM from the photographs, thus removing the Copyright management information from the photographs and has distributed games and merchandise including photos with removed copyright management information.  Further, Capcom has claimed the Copyright is owned by Capcom without any reference to Juracek's copyright.

82.     The foregoing was without authority of the Juracek or the law and is designed to induce, enable, facilitate or conceal infringement.

83.     Juracek is entitled to actual damages and any profits of Capcom or statutory damages of between $2,500 and $25,000 for each violation.

84.     Juracek is entitled to costs and attorney fees and an injunction to stop the irreparable harm to Juracek's exclusive rights.

85.     Juracek is entitled to an order ordering the destruction of all devices or products involved in the removal and/or falsification of Copyright management information.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.      An order immediately and permanently enjoining Defendants, its officers, members, agents, servants, employees, attorneys, and all persons in active concert or participating with any of them, from utilizing any of Plaintiff's copyrights in any way.

B.      Direct Defendants to destroy each and every copy of all games, products and other content including Plaintiff's photographs.

C.      That Defendant be ordered to pay to Plaintiff damages sustained as a result of the activities complained of herein, including actual damages, profits, exemplary damages and if elected, statutory damages.

D.      That Defendant be ordered to pay increased damages due to its willful infringement.

E.       That Defendant be ordered to pay Plaintiff's reasonable attorneys' fees and costs incurred in this action.

F.      That Plaintiff be awarded such other and further relief as may be contemplated by statute law and/or equity and such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  Stamford, Connecticut          ST. ONGE STEWARD JOHNSTON & REENS LLC
           October 11, 2021


                                /s/Jonathan A. Winter/
                                Gene S. Winter, Esq.
                                Jonathan A. Winter, Esq.
                                986 Bedford Street
                                Stamford, Connecticut 06905-5619
                                Telephone: (203) 324-6155
                                Facsimile: (203) 327-1096
                                Email:  gwinter@ssjr.com
                                        jwinter@ssjr.com
                                        litigation@ssjr.com

                                *Attorneys for Plaintiff Judy A. Juracek*